THE STATE vs. RORIE ET AL.

The statute (*secs.* 9, 10, *p.* 371, *Gould's Dig.*) prohibiting the betting of money at "any game of hazard or skill," was not intended to embrace horse racing.

*Appeal from Conway Circuit Court.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

HOLLOWELL, Attorney General, for the State.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

Rorie and others were indicted, in the Conway Circuit Court, for betting at a "*certain game of hazard, commonly called a horse race.*" The court quashed the indictment, on the ground that the betting upon a horse race was not prohibited by any of the provisions of the gaming acts; and the State appealed.

Horse racing and foot racing were held to be embraced by the statute of 9 *Ann C.* 14. In *Blaxton vs. Pye,* 2 *Wilson* 309, the court said "they ought to extend the statute of 9 Ann to pre vent excessive betting upon all *sports* as well as *games,* and that although horse racing is not mentioned in that statute, yet it is within the general words *other game or games.*"

But it appears from other cases, that the statute of 9 Ann was construed in connection with the preceding statute of 16 *Car.* 2, *Ch.* 7, in which, horse racing, foot racing, cock-fighting, dog-matches, etc., were expressly named. See *Lynall vs. Longbothom,* 2 *Wilson* 36; *Gooburn vs. Marley,* 2 *Strange* 1,159; *Shelton's case,* 8 *Grattan* 594.

The decisions of the American courts are not in harmony upon this subject. Some of them have held that horse racing is embraced by general terms in their gaming statutes, though not named. *Ellis vs. Beale,* 18 *Maine* 337; *Cheesum vs. State,* 8 *Blackf.* 332; *Shropshire vs. Glascock et al.,* 4 *Mo.* 536; *Wade vs. Deming,* 9 *Ind.* 35.

Others have held to the contrary. *Harless vs. U. S.,* 1 *Morris (Iowa)* 169, *Dig. Io. Rep.; Shelton's Case,* 8 *Grattan* 594; *McElroy vs. Carmichael,* 6 *Texas* 456.

These decisions have been influenced by expressions contained in the statutes upon which they were made, by consideration of the entire legislation of the State concerning the subject, and by the knowledge of the courts in relation to the popular use and meaning of the terms, *game, gaming, sports, etc.* 2 *Bishop Cr. L.* 515, 518.

HARVARD LAW SCHOOL LIBRARY

At the January term, 1854, this court held that *raffling* was not indictable under any of the provisions of the gaming act. *Norton vs. State*, 15 *Ark.* 71. So, at the July term of the same year, it held that betting at *rondo* was not within the prohibitions of the statute. *State vs. Hawkins, ib.* 259. At the ensuing session of the Legislature, the act under which the appellees were indicted, was passed, (January 22d, 1855,) which declares that: " If any person shall be guilty of betting any money, or any valuable thing, on any game of hazard or skill, he shall, on conviction, be fined," etc. The second section declares that: " In prosecuting under the preceding section, it is sufficient to charge that the defendant bet money or other valuable thing on a *game of hazard or skill*, without stating with *whom* the *game* was *played.*" *Gould's Dig., p.* 371, *secs.* 9, 10.

The object of this act was to enlarge the prohibitions of the gaming act, which punished nothing but the keeping, etc., or betting at gaming *banks, tables, etc.*, and *cards*, so as not only to embrace *raffling* and *rondo*, but other gambling contrivances and devices. But we do not think that the Legislature intended to embrace horse-racing by the words "*any game of hazard or skill*," "*played,*" etc., however vicious betting at such sports may be.

The judgment of the court below must be affirmed.