Thatcher v. State.

THATCHER V. STATE.

1. CRIMINAL LAW:  *Keeping disorderly house : What is.*
   To constitute the offense of keeping a disorderly house, it is not neces-
   sary that the disorderly, immoral and lascivious conduct be of such
   a character as to disturb the peace and quiet of the neighborhood.
   It is sufficient that the house be so kept as to draw together idle,
   vicious, dissolute or disorderly persons engaged in unlawful or im-
   moral practices, endangering the public peace and promoting im-
   morality.

2. BILL OF EXCEPTIONS:  *Construction of Rule XIII.*
   (For construction of Rule XIII, of the Supreme Court, as published
   in Forty-fourth Arkansas Reports, see opinion.—Rep.)

APPEAL from *Garland* Circuit Court.

Hon. J. B. WOOD, Judge.

*L. Leatherman,* for appellant.

The verdict of the jury was contrary to the law and the
evidence.

1.  The evidence should establish the fact that a dis-
orderly house was kept.

2.  That the defendant had control of the rooms in
which the disorder occurred.

3.  That the defendant knowingly permitted the con-
duct constituting a disorderly house.

The proof shows that Ballentine owned the building
and that Thatcher had only control of the saloon, and
there was no proof to show he had control of any other
rooms in the house.

No proof of disorder in the saloon; no proof showing
the defendant permitted any disorderly conduct, such as
would constitute a disorderly house, in any part of the
building under his control.

The jury had no right to presume the defendant guilty; the presumptions of law are to the contrary.

Instructions one and two, given by the court, were misleading and erroneous, in directing the jury that they may find the defendant guilty though he had no guilty knowledge of the bad character of those resorting to the house, or the purposes of prostitution of those visiting the house, or of the criminal sexual intercourse there.

These two instructions by the court virtually nullifies and renders ineffectual instructions one, two and three, previously given on behalf of the defendant.

*Dan W. Jones*, Attorney-General, for appellee.

The appellant was indicted for keeping a disorderly house, and the proof showed that he kept a saloon with several rooms attached, and that in these rooms and saloon, male and female persons of dissolute character collected, drank, swore, gambled and bedded together. That boys congregated about the doors so as to obstruct the passers-by on the street. The house was kept open.

While the instructions asked and grounds of the motion for a new trial were numerous, there is no error in any of them. The principal grievance seems to be that the court refused to instruct, that to become a disorderly house, persons outside must be disturbed. This is not the law. *1 Bish. Cr. L., secs. 1111–12–15.*

BATTLE, J. The appellant, Henry Thatcher, and H. A. Ballentine, were jointly indicted in the Garland circuit court for keeping a disorderly house. The following is the indictment:

"Garland County Circuit Court.—The State of Arkansas, against H. A. Ballentine and Henry Thatcher.—Indictment.

"The grand jury of Garland county, in the name and by the authority of the state of Arkansas, accuse H. A. Ballentine and Henry Thatcher of the crime of keeping a disorderly house, committed as follows:   The said H. A. Ballentine and Henry Thatcher, on the 15th day of March, 1886, in the county and state aforesaid, and on divers other days and times between that day and the day of the presentation of this indictment, a certain, common, ill-governed and disorderly house, unlawfully, did keep and maintain; and, in said house, for their own gain and lucre, certain evil-disposed persons, as well men as women, of evil name, fame and conversation to come together, on the days and times aforesaid there unlawfully and willingly did cause and procure; and the said persons in the said house, at unlawful times, as well in the night as the day, on the days and times aforesaid, there to be and remain drinking, tippling, cursing, swearing, quarreling, gambling, whoreing and otherwise misbehaving themselves, unlawfully did permit and suffer, to the great injury and common nuisance of all the peaceable citizens of the state, there residing, inhabiting and passing; to the evil example of all others in the like case offending to the great injury of public morals, the perversion of public justice, and against the peace and dignity of the state of Arkansas.

"J. P. HENDERSON, *Prosecuting Attorney.*"

The defendants demurred to this indictment, which was overruled.

The evidence introduced in the trial, so far as it is set out in the bill of exceptions, tended to prove that Thatcher occupied a house in the city of Hot Springs, in this state,

Thatcher v. State.

within the time stated in the indictment, which was kept as a bawdy and common gaming house, and dram shop.

The defendant asked and the court refused to give the following instructions: "To warrant the conviction of any one upon the charge of keeping a disorderly house it is necessary that the disorderly conduct be of a nature and degree sufficient to disturb the peace or quiet of the neighborhood in which it occurred."

"Immoral, illegal and lascivious conduct occurring in a house is not sufficient to warrant a conviction of the owner or keeper thereof, upon the charge of keeping a disorderly house, unless such conduct was so boisterous, open or notorious as to disturb the quiet or peace of the neighborhood."

The defendant Thatcher was convicted. He moved for a new trial, which was refused; and he filed a bill of exceptions, and appealed.

Was the indictment sufficient? Such indictments have been, expressly, held to be good. It is in accordance with the precedents laid down by Bishop, in his work on Criminal Procedure, and Chitty, in his work on Criminal Law, for the guidance of the practitioner. *State v. Patterson, 7 Ired., 70; Com. v. Pray, 13 Pick, 359; Rex v. Higginson, 2 Burrows, 1232; 2 Bishop on Criminal Procedure (2d Ed.), secs 105, 273; Wharton on Criminal Law (9th Ed.), sec. 1450.*

*1. Keeping disorderly house.*

The keeping of a common gaming house, bawdy house, diorderly ale house or inn, or of any other disorderly house, is a common law offense, on account, among other reasons, of its influence upon the public morals. The keeping of a disorderly house may consist in allowing the place to be so noisy and disorderly as to disturb the public peace and annoy the neighborhood. But it is not necessary to show such noise in all cases, because the

keeping of such house may consist, in its drawing together idle, vicious, dissolute or disorderly persons engaged in unlawful or immoral practices, thereby endangering the public peace and promoting immorality.   Such houses are prohibited, not only on account of noise, but because of their tendency to promote immorality and lead to breaches of the peace.  "If the owners of a house," it is said, "are practically open to the public, alluring the young and unwary into it, to indulge in or witness anything corrupting to their virtue or general good morals, the keeper cannot excuse himself by alleging that the public is not disturbed."  *Wharton on Criminal Law (9th Ed.)*, *secs. 1449, 1451, 1456; 1 Bishop on Crim. Law (6th Ed.)*, *secs. 1110, 1111, 1107, 1113, 1119, 1120; State v. Williams, 30 N. J. L., 104; Cone v. Cobb, 120 Mass., 356; Vanderworke v. State, 13 Ark., 700.*

In *State v. Williams, supra,* Chief Justice Whelpley, in delivering the opinion of the court, said: "No private individual has a right, for his own amusement or gain, to carry on a public business clearly injurious to and destructive of the public quiet, health or morals, and is indictable for so doing because the injury is of a public character, and not merely private, or to a single individual."

The statutes of this state have re-enacted the common law to some extent, by making it a misdemeanor for any owner or occupant of a house to knowingly permit gaming of any kind in such house.  *Mansfield's Digest, sec. 1830.*

The instructions were properly refused.

Appellant contends that the verdict of the jury was not sustained by sufficient evidence, because the acts of disorderly conduct proven were not shown to have been done in any room controlled or kept by him.

2. Bill of exceptions Rule XIII.  The bill of exceptions does not undertake to give all the evidence introduced in the trial, but only the substance

Thatcher v. State.

of it.   It is an attempt to follow Rule XIII of this court. It will be observed in reading this rule that it prescribes the manner in which evidence shall be set out in a bill of exceptions in two classes of cases:   *First*—In cases where it is necessary to present to this court the rulings of the court below upon some matter of law.   *Second*—To show a defect of proof, where that is the ground of ruling or exception.   In the first case the bill of exceptions is only required to contain such statement of facts as may be necessary to explain the bearing of the rulings upon the issue or questions involved; and if the facts are undisputed they are required to be stated as facts, and not the evidence from which they are deduced; and if disputed, it is required to state that evidence was adduced tending to prove them, instead of setting out the evidence in detail. In the second case, the particulars in which the proof is supposed to be defective is required to be briefly stated, and all the evidence offered in any wise connected with the supposed defect, is required to be set out in the bill of exceptions.   As the particulars in which the proof is now contended to be defective and all the evidence in any wise connected with it, are not set out in the bill of exceptions, as required by the rules of this court, it will be presumed, in the absence of a contrary showing, that the evidence was sufficient to sustain the verdict.

We find no error in the judgment of the court below, and it is affirmed.