MACE *v.* STATE.

Opinion delivered July 1, 1893.

*Gaming—Betting on base-ball.*

> Base-ball is a " game of skill " within the statute which makes betting on " any game of hazard or skill " an offense. (Mansf. Dig. sec. 1835.)

Appeal from Crawford Circuit Court.

HUGH F. THOMASON, Judge.

*E. B. Pierce* and *Jesse Turner, Jr.*, for appellant.

Betting on a game of base-ball is not a violation of the criminal laws of this State. Review the legislation and decisions of the State, citing Mansf. Dig. sec. 1827, 1834, 1842 to 1847, etc.; Rev. St. ch. 44, secs. 1 and 9 ; 15 Ark. 71; *Ib.* 259; 23 *id.* 726; 31 Ark. 462; 18 B. Mon. (Ky.), 35 ; 1 Kas. 474.

*James P. Clarke*, Attorney General, for appellee.

The object of the statute was to suppress *betting* on any game of hazard or skill. Base-ball is a *game* of *skill*. Reviews the legislation of this State and others, and of England and the decisions, citing 35 Ark. 72 ; 27 *id.* 360 ; 23 *id.* 726 ; 12 Tex. 274-5 ; 18 Ark. 544 ; 33 *id.* 138-9; 5 Sneed, 509 ; 2 El. & Bl. 286 ; 10 M. & W. Exch. 728 ; 1 Jur. (N. S.), 660 ; 53 Iowa, 154 ; 14 Gray (Mass.) 390.

POWELL, J. At the June term of the Crawford circuit court, the appellant, B. C. Mace, was indicted

for betting on a game of base-ball. The indictment in substance is as follows : The said B. C. Mace, on the 10th day of May, 1892, in the county aforesaid, unlawfully did bet the sum of one dollar, on a certain game of hazard or skill, then and there played, called base-ball.

The appellant interposed a general demurrer to the indictment, which was overruled by the court. The appellant then entered a plea of not guilty, was tried, convicted and fined $10. He then filed his motion for a new trial, assigning as a reason therefor that the court erred in overruling his demurrer to the indictment. The court overruled the motion, and the defendant prayed an appeal to this court. The only question presented for the consideration of the court in this case is, whether betting on a game of base ball is a violation of the criminal laws of the State of Arkansas.

The appellant was indicted under section 1835 of Mansfield's Digest, which reads as follows : "If any person shall be guilty of betting any money, or any valuable thing, on any game of hazard or skill, he shall, on conviction, be fined in any sum not less than ten dollars nor more than twenty-five dollars."

This section of the statute is embodied in what is known as the gaming laws of the State, and the terms gaming, betting and gambling may, in most instances, be used interchangeably.

The legislation of this State, although not as voluminous as that of many of the other States, seems to fully cover the vice of gambling or betting on games, which is the vice intended to be prohibited.

Section 1827, Mansfield's Digest, prohibits the setting up, keeping or exhibiting the banking games, naming many that were known, and by its provisions all banking games, or gambling devices of any other like description, are prohibited. By section 1828 it is made indictable to be interested, either directly or indirectly,

in the gambling devices prohibited in section 1827. Section 1829 makes it indictable to bet on the games prohibited, and punishes the betting by the same penalty as for keeping or exhibiting, or being interested in, these gambling devices. Section 1834 prohibits betting on any game of cards. This section is as follows: "If any person shall be guilty of betting any money, or any valuable thing, on any game of brag, bluff, poker, seven-up, three-up, twenty-one, vingtun, thirteen cards, the odd trick, forty-five, whist, or at any other game at cards known by any name now known to the laws, or with any other or new name, or without any name, he shall, on conviction, be fined in any sum not less than ten nor more than twenty-five dollars."

The playing at cards is not prohibited; it is the betting on these games which is the vice legislated against. We suppose that no one would contend that this statute is not comprehensive enough to include the betting upon all games at cards, known at its passage, or that have since been invented, or that may be invented, with or without a name.

The games known as the banking games, prohibited by the laws, are rarely resorted to as a means of recreation or for pastime, except in connection with gambling, and are in themselves harmless, and would have demanded no legislation but for the fact that the keeping of them furnishes a resort for the congregation of the idle, thoughtless and vicious, where they may gratify that inclination and disposition to gamble which is said to be implanted in man's nature, and which is most difficult to bring within the restraint of the law. It is said, the Indian will stake his wife, and the ancient German would stake himself, to gratify the passion. Blackstone, vol. 4, page 171, says, gaming, "taken in any light, is an offense of the most alarming nature; tending by necessary consequence to promote public idleness, theft

6

and debauchery among those of a lower class; and among persons of a superior rank, it hath frequently been attended with the sudden ruin and desolation of ancient and opulent families, an abandoned prostitution of every principle of honor and virtue."

We deem it unnecessary to enumerate the reasons for the enactment of the various statutes upon the offense of gaming, and think we may safely say, as did the learned commentator upon the English law, that the legislature has been careful to prevent the destructive vice, and that our laws against gaming are not deficient.

In the case *Tatman* v. *Strader*, 23 Ill. 494, under a statute of that State which prohibits betting on games, the court says : " The word game in our language has a very broad and comprehensive signification."

Illustrations innumerable might be given to show that the ordinary and popular understanding of the word "gaming" includes feats of physical power and skill, as a game of quoits, ball, etc. In the case of the *State* v. *Miller*, 53 Iowa, 154, under a statute which prohibits the playing at any game for any money or other property of any value, the court holds that billiards is a game within the inhibition. In the case of the *People* v. *Weithoff*, 51 Mich. 203, it was held that the betting on a game of base-ball was prohibited under a statute prohibiting the betting upon any game of skill or chance. The court, per Cooley judge, said that base-ball was a game, in its strictest sense.

After the enactments above quoted prohibiting the banking games and the betting thereon and the betting at games of cards, upon an indictment charging raffling as a game, reported in 15 Ark. 71 *(Norton* v. *State)*, the court said the act complained of may be within the mischief, but not within the prohibition, of the law against gaming, and if the practice grew to be an evil, it would require further legislation for its sup-

pression. This game seems to have been played with dice. At the same term of the court, under an indictment for a game called rondo (*State* v. *Hawkins*, 15 Ark. 259), which was a game played by rolling balls upon a billiard table, at which the players bet against each other, the court said, it would be a forced construction of the law to hold that it includes "such games as rondo was here shown to be. Upon the same principle, we would have to hold that billiard tables, ten pin alleys, a fives court and the like are gambling devices." At the next session of the legislature, the statute upon which this indictment is based was passed, doubtless for the very purpose of remedying the defect in our gaming laws made manifest by the rendition of the above decisions ; and, the legislature being convinced of the fact that legislation against special games would not accomplish the object intended, professional gamblers being as fertile in devising means of evasion as the legislature had been in its attempts to prevent the vice, that this special class of legislation would ever be lame and deficient unless all betting upon games was prohibited, enacted this law for the purpose of curing all defects in the laws then in force, for the prevention of gambling upon games ; and it appears to us that this statute is comprehensive enough to include all betting upon games of whatever name. In the act no game by name or class is mentioned. The only qualification or restriction is that it is a game either of hazard or skill. The statute is self-explanatory. By the decisions above quoted, base-ball is held to be a game, and that it is one of skill cannot be doubted.

The case of the *State* v. *Rorie*, 23 Ark. 726, we think, is not in conflict with the interpretation herein given of the statute. The indictment in that case charged the defendant with betting on a game of horse racing. The court, in ruling upon it, held that horse

racing was not a game but a sport, and not embraced in this section of the statute. While there are many authorities which hold that horse-racing is a game within the inhibition of similar statutes to ours, there are many reputable authorities which hold the contrary. See 8 Am. & Eng. Enc. of Law, p. 1038, note 5.

We hold that the overruling the demurrer to the indictment was right. To rule otherwise would in our opinion be derogatory to the statutory rule for the construction of the laws upon gaming. Mansfield's Digest, sec. 1840.

Judgment affirmed.

Battle, J., dissenting. In *State* v. *Rorie*, 23 Ark. 726, it was held that horse racing was not a game within the meaning of the statute which makes betting on "any game of hazard or skill" an offense. For the reasons given for so holding, I think that base-ball is not such a game within the meaning of the statute.

Mansfield, J., concurs in this dissenting opinion.