McGowan v. Paragould.

Opinion delivered March 31, 1924.

1. DISORDERLY HOUSE—EVIDENCE.—In a prosecution for keeping a disorderly house, evidence held insufficient to sustain a conviction.

2. DISORDERLY HOUSE—EVIDENCE.—The fact that defendant permitted a man to visit her for immoral purposes did not constitute keeping a disorderly house.

Appeal from Greene Circuit Court, Second Division; W. W. Bandy, Judge; reversed.

Huddleston & Little, for appellants.

Jeff Bratton, for appellee.

HART, J. George McGowan and Jessie Beavers were separately tried and convicted in the municipal

court in the city of Paragould for keeping a disorderly house in that city.

Each defendant prosecuted an appeal to the circuit court, and the cases were consolidated and tried together there. The jury found the defendants guilty and fixed their punishment at $10 each. From the judgment of conviction the defendants have duly prosecuted an appeal to this court.

It is earnestly insisted by counsel for the defendants that the testimony is not legally sufficient to support the verdict. The law of the case is well stated in *Thatcher* v. *State,* 48 Ark. 60. Judge BATTLE, who delivered the opinion of the court, in discussing what constitutes keeping a disorderly house, said:

"The keeping of a common gaming-house, bawdy-house, disorderly ale-house or inn, or of any other disorderly house, is a common-law offense, on account, among other reasons, of its influence upon the public morals. The keeping of a disorderly house may consist in allowing the place to be so noisy and disorderly as to disturb the public peace and annoy the neighborhood. But it is not necessary to show such noise in all cases, because the keeping of such house may consist in its drawing together idle, vicious, dissolute or disorderly persons engaged in unlawful or immoral practices, thereby endangering the public peace and promoting immorality. Such houses are prohibited, not only on account of noise, but because of their tendency to promote immorality and lead to breaches of the peace. 'If the doors of a house,' it is said, 'are practically open to the public, alluring the young and unwary into it, to indulge in or witness anything corrupting to their virtue or general good morals, the keeper cannot excuse himself by alleging that the public is not disturbed.'"

The principal witnesses for the State were the chief of police and a night policeman of the city of Paragould. Each of them testified that he was well acquainted with the house where Jessie Beavers resided in the city of Paragould. George McGowan went there frequently,

just after dark, and stayed until ten or eleven o'clock at night. He was also seen by the witnesses there on several occasions in the daytime. On two occasions the chief of police heard George McGowan and Jessie Beavers having a quarrel. McGowan seemed to be mad at her because her sister was there on a visit. Each of the witnesses also saw other men in front of the house, in the night-time, on several different occasions, but did not see them enter the house or create any disturbance around it.

One witness testified that he hauled a load of wood to the home of Jessie Beavers every month or so, and that George McGowan paid him for it.

Another witness who lived in the neighborhood testified that he saw men pass his house in the night-time, going in the direction of Jessie Beavers' house, but did not know whether any of them went into her house.

Tested by the rule laid down above, we think the evidence falls short of warranting a conviction by the jury. None of the elements of keeping a disorderly house, as laid down by the decision above quoted, were established before the jury. It was not shown that the defendant allowed people to congregate in her house and to be so noisy and disorderly as to disturb the public peace. It is not shown that she permitted idle, vicious or disorderly persons, or any crowd of persons whatever, to congregate in her home.

It is fairly inferable that Jessie Beavers allowed George McGowan to visit her for immoral purposes, but this of itself does not constitute the offense of keeping a disorderly house.

Then, too, some of the neighbors testified that her house had a bad reputation. But the witnesses said that they did not know whether or not she permitted idle and immoral people to congregate in her house, and that they had never heard any noisy or disorderly conduct there. It is true that the chief of police heard McGowan and Jessie Beavers quarreling in the house on two occasions, but this was not sufficient to establish the fact that either of them kept a disorderly house. In short, the proof has

not established that either of the defendants keeps a disorderly house within the meaning of the law laid down in the opinion above cited.

It follows that the judgment must be reversed, and, as the facts seem to have been fully developed, no useful purpose could be served by remanding the case for a new trial. Of course, a new charge might be based upon facts warranting it occurring since the date of the offense charged herein.

Therefore the judgment will be reversed, and the charge against the defendants will be dismissed here.