WARD v. CITY OF LITTLE ROCK.

1. PUBLIC IMPROVEMENTS : *Meaning of, in sec. 4,438 Gantt's Digest.*
   The "public improvements" on which (by sec. 4,438, Gantt's Digest)' convicts of the penitentiary may be worked, include all public works. belonging to or prosecuted by the State, the county or the city.   .

2. MUNICIPAL COUNCILS : *No power to declare nuisances.*
   Secs. 12 and 42, act of March 9, 1875, do not authorize a city council to condemn any act or thing as a nuisance which, in its nature, situation or use, does not come within the legal notion of a nuisance.

3. INJUNCTION : *Against nuisance.*
   A court of equity will not interfere to prevent an act merely because it

Ward v. City of Little Rock.

is illegal; and will not abate a public nuisance at the suit of a private party unless he shows that he has sustained, and is still sustaining individual damage. A nuisance to give jurisdiction for an injunction must actually exist or be imminent.

APPEAL from *Pulaski* chancery court.

Hon. D. W. CARROLL, Chancellor.

*Clark & Williams*, for appellant.

It is false and absurd to say that an act is a nuisance because it is a violation of law, or that the city has authority to declare that to be a nuisance which otherwise and by general laws is not a suisance, because it is prohibited by law.

Nothing can be a nuisance unless it works an injury. *2 Bovu. Law Dictionary, 245; 4 Waite's Actions and Defenses, 726.*

But no injury or damage or inconvenience to any one is here alleged to make it either a public or private nuisance, except that the convicts, being in the streets, might create disturbance of the peace, or excite mobs, etc. But it has been held, time and again, that the nuisance, to give jurisdiction for an injunction, must actually exist. A mere threat or an act which may upon some contingency or at some remote time prove a nuisance, will not warrant the interference of the court. *Bisham's Equity, 492; Kerr on Injunctions, 337, 338.*

A mere apprehension on the part of complainant, of a possible or speculative harm will not be enough. *Rhodes v. Dunbar, 7 P. F. Sm., 274; Butler v. Rogers, 1 Stockt., 487; Mohawk Bridge Co. v. Utica & Schenectady R. R. Co., 6 Paige Ch., 554; High on Injunctions, sec. 488 and note 1,489; 2 Story Eq. Jvris., sec. 924, a.*

Nor can a city declare that a nuisance which is not a nuisance independent of the ordinance —*i. e.*, which is not a nuisance by general law. *4 Waite's Actions and Defenses,.*

*618; Yates v. Milwaukee, 10 Wall. U. S., 497; Dillon on Mun. Corp., 308.*

Even it was a nuisance the court had no jurisdiction to enjoin it at the suit of the city. To enable a private party to enjoin a public nuisance he must allege some specific injury or damage to himself. *2 Story Eq. Juris., sec. 920-1-4; High on Inj., sec. 522; Kerr on Inj., 337, Calcraft v. West, 2 J. & L., 123; High on Inj., secs. 485-6-7-8 and note 1.*

The words " public improvements" include and mean all improvements of a public nature, whether State, county or city. This is evident from the fact that in the engrossed act a semi-colon appears after the word "improvements," which is left out in the *Digest.*

*W. L. Terry,* city attorney *contra,* contends that the phrase "public improvements," as used in *sec. 4,438 of Gantt's Digest, is* limited by the words "owned by the State," and that the working of convicts on the streets of the city of Little Rock is unlawful and a nuisance. In a contest between *grammar* and *punctuation,* the former will be given the most weight in ascertaining the meaning of a sentence. *15 Am., 588.*

By *secs. 12 and 22, Act March 9, 1875,* cities have "power to *prevent* injury or annoyance within their limits, etc., and to cause *nuisances* to be abated; also to *prevent* riot, noise, disturbance, or disorderly assemblages, etc."

The working of convicts on the streets endangered the peace and safety of the inhabitants, was calculated to cause riots and was a nuisance, and the city had the right to enjoin. *High on Inj., p. 706; 6 Car. & Payne. 636; Wood on Nuisance, sec. 267; 18 Ark., 261.*

Even if not a nuisance, where the doing of a certain thing is prohibited, and no express remedy provided to enforce the prohibition, a court of chancery has jurisdiction to prevent it by *injunction.* See authorities *supra.*

SMITH, J.   The city filed this bill to enjoin the lessee of the penitentiary from working the convicts upon its streets. It was alleged that such employment of them was in violation of law and also in violation of an ordinance of the plaintiff, declaring the same to be a public nuisance ; and that it was calculated to produce riots, to endanger the lives of the inhabitants and to disturb the peace and good order of the city. The chancellor overruled a demurrer to the bill, and the defendant refusing to answer, a perpetual injunction was awarded.

*Sec. 4,438 of Gantt's Digest* provides that:   "The convicts now or hereafter confined in said penitentiary shall not be worked within the corporate limits of the city of Little Rock, except on public improvements, and buildings and grounds owned by the State, nor elsewhere without the walls of said penitentiary, unless under good and sufficient guard to protect the escape of the same, nor longer than ten hours each working day." <span style="float:right">1. PUBLIC IMPROVE-MENTS: Meaning of.</span>

The chancellor construed this statute to mean that the convicts could be worked within the corporate limits of the city of Little Rock, only upon the grounds, buildings and improvements which were the property of the State, but elsewhere in the State without any restrictions, save as to proper guards to prevent their escape.

Passing over the question whether the legislature could constitutionally make such a distinction between the capital and the other cities and towns of the State, our conclusion is that the term "public improvements" includes all public works belonging to or prosecuted by the State, the county or the city.

The ordinance forbidding the working of convicts in the city, and declaring the same a nuisance, was wholly ineffectual for any purpose. The city council has "power to prevent injury or annoyance within the limits of the corporation from anything dangerous, offensive or unhealthy, <span style="float:right">2. MUNICIPAL CORPORATIONS: Power to declare nuisance.</span>

and to cause nuisances to be abated." It is also invested with power to make and publish, from time to time, by-laws or ordinances not inconsistent with the laws of the State, for carrying into effect or discharging their powers and duties." *Act of March 9, 1875, secs. 12 and 22.*

But this does not authorize the council to condemn any act or thing as a nuisance, which, in its nature, situation or use does not come within the legal notion of a nuisance. *Dillon on Mun. Corp., 3d Ed., sec. 374, and cases cited.*

In *Yates v. Milwaukee, 10 Wall., 497,* Mr. JUSTICE MILLER uses the following language on this subject: "The mere declaration by the city council that a certain structure was an encroachment or obstruction did not make it so, nor could such declaration make it a nuisance unless it in fact had that character. It is a doctrine not to be tolerated in this country that a municipal corporation without any general laws either of the city or of the State, within which a given structure can be shown to be a nuisance, can, by the mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place every house, every business, and all the property in the city at the uncontrollable will of the temporary local authorities."

Now, nuisance means literally annoyance—anything that works hurt or injury. But the working of its streets by convicts or any other class of people, who can be procured for the purpose, produces no damage or inconvenience to the city, or to its inhabitants, or to any one else. On the contrary, the fair presumption is that the condition of the streets will be ameliorated by such work without injury to anybody.

It may also be doubted whether the plaintiff has shown in itself any such interest in the subject matter of this suit as to entitle it to invoke the jurisdiction of the chancellor. Considering the act complained of as a violation of the

statute, it is not the province of a court of equity to inter-
fere for the prevention of an act merely because it is
illegal.    *High on Injunctions, sec. 23.*

Again :    Considering the scope and purpose of the bill to
be the abatement of a public nuisance, such a bill cannot be
maintained unless it shows that the plaintiff has sustained,
and is still sustaining, individual damage.    *Miss. and Mo.
R. R. Co., v. Ward, 2 Black, 485.*

3. INJUNC-
TION.
To abate
nuisance.

The present bill alleges no special damages, but proceeds
on the idea that the presence of the convicts in the streets
might create a disturbance of the peace or excite mobs.
But the nuisance, to give jurisdiction for an injunction, must
actually exist or be imminent."    "A mere threat or an act,
which may, upon some contingency or at some remote time,
prove a nuisance, will not warrant the interference of the
court.    And the injury must not be contingent merely ;
and apprehension on the part of the complainant of a possible
or speculative harm will not be enough."    *Bis. Eq.,
sec. 440.*

In truth this suit is based upon the sentimental notion
that the laborers, not of the State at large, but of the city
of Little Rock, are to be protected from competition with
convict labor.    It is preposterous to attribute to the legis-
lature any such intention.    It is the settled policy of the
State that those who, for crimes committed, are sentenced
to the penitentiary, shall be confined at hard labor.    They
are not to be maintained in idleness, because that would
entail a heavy burden upon the tax-payers, without any cor-
responding benefit to the criminals themselves.    And it was
certainly contemplated that their labor should be productive
—not a mere rolling of stones up hill which constantly roll
back again.

Now, whether they be put to manufacturing bricks or
shoes, or to building railroads, or mending highways, or to
performing farm work, they will be doing work in which

honest men are also engaged. But this is unavoidable; for no useful occupation can be found for them in which honest men are not employed. Their labor does not degrade the occupation. And it is no greater hardship upon the workingmen of Little Rock that they should be exposed to competition with such labor than it is to the workingmen of other portions of the State; or, if it is, it is one which the law is powerless to relieve.

The decree of the chancellor is reversed, and a decree will be entered here, dismissing the bill.