RITHOLZ *v.* ARKANSAS STATE BOARD OF OPTOMETRY.

4-7263                                      177 S. W. 2d 410

Opinion delivered January 24, 1944.

672

*E. Chas. Eichenbaum,* for appellant.

*Howard Cockrill* and *Pat Mehaffy,* for appellee.

GRIFFIN SMITH, C. J. The appeal is from a decree enjoining B. D. Ritholz and others [1] from practicing optometry through the services of licensed physicians or optometrists, or otherwise, and from continuing the character of advertising shown to have been engaged in, and from violating any of the provisions of Act 94 of 1941.

Ritholz and his associates represent themselves to be operators of the largest chain of optical stores in America. Their principal place of business is in Chicago. Prior to July, 1940, they had employed a physician whose compensation was $40 per week. None in the Ritholz partnership was a physician, optometrist, ophthalmologist, or in other respects professionally equipped. National maintains a Little Rock store at 207 Main Street and claims that its business is merchandising; that in effect it sells glasses the way a druggist fills prescriptions for medicine. In addition, it carries in stock an assortment of ready-made spectacles, and permits cus-

---

[1] National Optical Stores Company is a partnership composed of B. D., M. I., Samuel, Sophie, Fannie, and Sylvia Ritholz.

tomers to fit themselves. This phase of the business is not complained of and is not within the judicial inhibition.

An excerpt from one of appellants' newspaper advertisements is: "All glasses sold by us are ground by expert optical artisans in our modern laboratory on prescription of a licensed doctor." This is inconsistent with the claim that National engaged exclusively in merchandising. Other misrepresentations were shown which do not come within the rule permitting legitimate "puffing."

The action is not one to enjoin the commission of a crime, as such. Its purpose, primarily, is to prevent the illegal practice of optometry, rather than to penalize the practitioner. If the latter alone were the object, Chancery would be without jurisdiction. The rule, as stated in 28 American Jurisprudence, Injunctions, § 148, at page 338, is that acts amounting to a public nuisance will be restrained if they affect the civil or property rights or privileges of the public, or endanger the public health, regardless of whether such acts are denounced as crimes.

The salaried physician (who also maintained an independent office at 319½ Main Street) contracted with Ritholz and his associates,[2] to rent 96 square feet of office space occupied by National, payment to be $35 per month. This contract, *prima facie,* merely creates the relationship of landlord and tenant. Affirmative expressions were used in a seeming effort to emphasize what the Ritholzs now contend to have been the purpose—that is, merely to provide convenient office quarters for the physician in order that National customers might be accommodated if on their own initiative they elected to have professional assistance in those instances where advice of an optometrist was required. The contract physician testified that he charged $1.00 for examinations and received a commission of 20 percent on certain sales of glasses after examinations had been made by him at his office in the adjoining block. Compensation thus realized and that received from his private

[2] The agreement is dated July 1, 1940.

practice amounted to approximately $500 per month as distinguished from the former salary of $40 per week. He did National's work exclusively.[3]

We think the case is controlled by *Melton* v. *Carter*, 204 Ark. 595, 164 S. W. 2d 453. In that case constitutionality of Act 94 was upheld. It was also said that the legislative object was to prohibit employment of an optometrist by one who is not licensed. In other words, under that decision, "a layman may not engage in the profession by employing a licensed optometrist."

The decree in the instant case found that the lease agreement was collusive—"A fiction for the agency that exists between the parties," as the Chancellor expressed it. We think the testimony sustains this finding.

Affirmed.

---

[3] We do not interpret this statement in appellants' abstract to mean that the only business the physician did was that sent him by National; but, rather that National sent him all of its business.