HUDKINS *v.* ARKANSAS STATE BOARD OF OPTOMETRY.

4-7609                                    187 S. W. 2d 538

Opinion delivered April 23, 1945.

*E. Charles Eichenbaum* and *George W. Shepherd,* for appellant.

*Leffel Gentry* and *Sherrill, Cockrill & Wills,* for appellee.

GRIFFIN SMITH, Chief Justice. The "salaried physician" referred to in *Ritholz* v. *Arkansas State Board of Optometry*, 206 Ark. 671, 177 S. W. 2d 410, severed his relations with National Optical Stores Company and was succeeded by Dr. Ira N. Hudkins. Jack Rosenthal, who was Little Rock manager for the Company, likewise resigned. His place was filled by Theodore Kays. By certiorari Kays and Hudkins have brought here a record of proceedings had in Pulaski Chancery Court, including a finding that the petitioners were guilty of contempt in that they willfully violated injunctive mandates, validity of which was sustained in the Ritholz case.

It is insisted (1) that because Act 94[1] makes violation of the proscribed conduct a crime, equity is without jurisdiction to interfere by way of injunction, and (2) since Hudkins and Kays were not named in the original injunction they were not, properly before the Court. Third, if these questions be resolved against petitioners, still evidence was insufficient to justify the Chancellor's actions. [Findings are copied in the margin.[2]]

*First.*—We agree with petitioners that if the Board be utilizing injunction and fines for contempt as substitutes for penalties where transactions are denounced as

---

[1] Act 94 became a law February 25, 1941, without the Governor's signature.

[2] (1) Each of the defendants was given notice of said contempt citation. (2) Subsequent to the entry of the original injunction herein and prior to the affirmance thereof by the Arkansas Supreme Court, the defendant Theodore Kays took over the management of the National Optical Stores Company at 207 Main Street in Little Rock, replacing Jack Rosenthal who was manager at the time of the entry of the original injunction, and Dr. Ira N. Hudkins was employed by the National Optical Stores Company to perform the services being performed by Dr. Allen K. Hicks at the time of the entry of the original injunction, and the said Dr. Ira N. Hudkins had his office during this period on the store premises. (3) Subsequent to February 1, 1944, Dr. Ira N. Hudkins moved his office to 207½ Main Street in Little Rock, directly over the premises occupied by the National Optical Stores Company, and since that time the greater part of the sales made by the National Optical Stores Company has been on prescriptions written by Dr. Ira N. Hudkins and the major part of Dr. Hudkins' income has been from writing prescriptions filled by the National Optical Stores Company. The relationship existing between Dr. Ira N. Hudkins and the National Optical Stores Company enabled the defendants Ritholz to practice optometry contrary to law and to said injunction. (4) Theodore N. Kays and Dr. Ira N. Hudkins had notice or knowledge of said injunction. (5) During the months of March and April, 1944, and at other times as developed

crimes, its procedure is improper; but, as was said in the opinion handed down January 24, 1944, the relief sought by those complaining was not to enjoin the commission of a crime, as such. The purpose, primarily, was to prevent illegal practice of optometry. Cessation of the practice—not punishment for past acts—was the end.

The Board has nothing to do with prevention of crime; nor is it concerned with punishment. But under § 15 of Act 94 it is authorized to invoke injunctive aid as a means of protection. The emergency clause expresses a finding by the General Assembly that "the public has been injured through the activities of certain persons, firms and corporations not licensed to practice optometry," and the remedies should be made immediately available in the interest of health, etc.

A history of Act 94 is given in *Melton* v. *Carter*, 204 Ark. 595, 164 S. W. 2d 453. In that opinion, as in the Ritholz case decided in 1944, constitutionality of the legislation was upheld. But it was not intended thereby to say that injunctive jurisdiction may be conferred upon a court of chancery where the only infraction involves criminal conduct, or where civil rights guaranteed the public are not substantially involved. The principle was stated by Mr. Justice FRAUENTHAL in *Lyric Theatre* v. *State*, 98 Ark. 437, 136 S. W. 174, 33 L. R. A., N. S., 325. He cited with complete approval the holding in *State* v. *Vaughan*, 81 Ark. 117, 98 S. W. 685, 7 L. R. A., N. S., 899, 118 Am. St. Rep. 29, 11 Ann. Cas. 277, where Chief Justice HILL said: ". . . if the public nuisance is one touching civil property rights or privileges of the public, or the public health is affected by a physical nuisance, or if any other ground of equity jurisdiction exists calling for an injunction, a Chancery Court will enjoin, notwithstanding the act enjoined may also be a crime."

As to the subject matter from which the case at bar proceeds, there is, upon the one hand, clear distinction

by the testimony, the defendants Ritholz, Theodore Kays and Dr. Ira N. Hudkins violated said injunction in contempt of this court, but the defendants Ritholz not being physically present, cannot be punished. (6) The advertising copy as introduced in evidence and used by the defendants Ritholz is "bait" advertising.

between criminal conduct and punishment, while upon the other hand there is the public's right of protection against continuing practices of unlicensed individuals who persist in an activity legislatively found to be inimical to the common welfare.

Although the statute says, in effect, that where the prohibited practice continues it *may* be enjoined at the Board's instance, necessarily an implication arises that in appropriate cases it is the Board's prerogative as an implement of the law to fairly present to a court of equity the facts it believes justify action. Then, if in the Court's discretion injunction follows, the right to find that there has been contemptuous disregard for the court's order is a necessary incident to the tribunal's jurisdiction to act in the first instance.

*Second.*—It is true Hudkins and Kays were not named in the injunction; but while the case was on appeal these petitioners filed affidavits that if the decree were affirmed they would suffer "permanent and irreparable damage." Expressed differently, their position was that if this Court should say the Chancellor had not erred in finding that the Ritholz partners were violating Act 94, then, because of their connection with the organization and because the acts alleged to be illegal would abate, damage to the petitioners became inevitable.

No service could more effectively apprise petitioners that a particular course of conduct had been enjoined than the information at hand. It is not 'always essential to jurisdiction that a particular person be named in an injunction. "Thus, a stranger to an injunction, if he has notice or knowledge of its terms, is bound thereby and may be punished for contempt for violating its provisions; but he cannot be charged with contempt unless a copy of the injunction was served upon him or it is proved that he had knowledge of its provisions." American Jurisprudence, v. 12, p. 409; *Beeson* v. *Chambers,* 192 Ark. 265, 90 S. W. 2d 770.

Evidence convinced the trial court that substitution of manager and physician was strategy to evade direct

mandates of the injunction. Viewing the transactions from all their angles, we cannot say testimony did not sustain the findings.

The Court was also correct in holding that Ritholz, being in a foreign jurisdiction, could not be reached for punishment.

Affirmed.

Mr. Justice HOLT and Mr. Justice ROBINS dissent.