STATE, EX REL. HALE, PROSECUTING ATTORNEY *v.* LAWSON.

4-8289                                        205 S. W. 2d 204

Opinion delivered November 3, 1947.

*Marcus Fietz* and *Herbert H. McAdams,* for appellant.

*Barrett & Wheatley* and *Berl S. Smith,* for appellee.

SMITH, J. This suit was filed by the State, *ex rel.* the Prosecuting Attorney of the second judicial circuit of which Craighead county is a part, against certain dairymen operating dairies in that county, to enforce compliance with a certain regulation of the State Board of Health requiring inspection of cattle to ascertain whether they were free from, or infected with, a disease popularly known as Bang's disease. It was alleged that the dairymen persistently refused to comply with the inspection regulations and it was prayed that they be enjoined and restrained from selling and distributing their milk products until the tests required by the regulations of the Board of Health had been complied with.

In answer to a motion that a bill of particulars be filed the following response was filed:

"Comes the plaintiff herein, for his response to the defendant's motion for Bill of Particulars herein states:

"First: That the rules and regulations made inquiry of by the defendant and under which the plaintiff is basing his allegation on as set out in his complaint is found in Division A of section 2 (Dairies) of Chapter 10 as found in rules and regulations of the State Board of Health of Arkansas, issued for the year of 1940. Said section may be found on page 67 of said rules and regulations.

"Second: The term reactor as used in the plaintiff's petition is meant that the animal or cow which shows positive from test made by a veterinarian accredited by the U. S. Bureau of Animal Industry and approved by the State Livestock Sanitary Board, for Bang's disease. Such reactors should be removed from the herd, which in reality means that the milk produced from such animals (reactors) will not be made available to the public either by sale or otherwise. It is not the purpose of this petition to determine the final disposition of such cattle when removed from the herd.

"Third: The plaintiff denies, that any representative of the State Health Department stated that such

animals declared as reactors would be slaughtered within fifteen (15) days.''

A voluminous answer was filed. It was denied by the defendant dairymen that the milk that they were selling was a great danger or any danger to the public, and they denied that they are selling milk in violation of any valid law of the state.

It was answered that it was required that the cattle be inspected under regulations which require the slaughter of all cattle reacting to the blood agglutination test, within fifteen days, and further that reactors are required to be branded in a manner which destroys from fifty to sixty per cent of their value.

It was further answered that the tests required by the regulations with which they have not complied are so inaccurate for diagnostic purpose that the requirement for slaughter based upon such tests deprives the defendants of their property without due process of law. That a vaccine has been developed which is proving satisfactory in the elimination of Bang's disease, and that the Bureau of Animal Industry of the United States Department of Agriculture now recommends three different methods of control as follows: (1) Test and slaughter, (2) Test and slaughter with calfhood vaccination, and (3) Test and retention of reactors with calfhood vaccination.

It was further answered that competent research indicates that in most animals Bang's disease is curable, either by the animal developing a natural immunity or by an immunity created by vaccine; that undulant fever is not a serious health problem and that the chances of contracting it from the use of raw milk are highly improbable.

It was further answered that pursuant to paragraph 15 of § 2, of Act 114 of 1941, the City of Jonesboro (in which city only the defendants sell their milk) has in force a standard milk ordinance approved by the Board of Health, which is being enforced by and through the Milk Inspector and City Health Officer, and that the

exclusive right of control and enforcement is vested in the city authorities, hence petitioner is without right to maintain this suit; that the existence of any disease in humans traceable to the milk supply of the City of Jonesboro is so rare as to be unrecognizable and the public health is adequately safeguarded by the activities of the city authorities. The paragraph of § 2 referred to reads as follows:

"Provided, that nothing in this Act shall be construed to deprive any city of the First or Second Class of any of its police powers now or hereafter granted. Nothing in this section or in any other section of this Act shall be construed as authorizing or directing in any fashion the State Board of Health to assume, to take over, or to discharge exclusively any of the functions and duties (or responsibilities) now, or hereafter customarily performed by Cities of the First or Second Class, operating under and enforcing an ordinance approved by the State Health Department dealing in dairy or other Sanitary Milk Inspection Work or the bacteriological sampling of milk.

"And, provided further that the duties discharged under the terms of this Act shall be discharged in so far as is practicable and reasonable in cooperation with the municipal authorities whereever such authorities exist."

It was further answered that criminal informations have been filed, charging the defendants with violation of rules and regulations of the State Health Department, and that by this action the State seeks to enjoin what it claims to be a criminal act, and for this reason the court is without jurisdiction to grant relief by injunction.

It was further answered that: "Throughout the United States the vaccination method of control has, and now is meeting the increased approval of state and federal authorities and does not impose upon the herd owners the economic loss incident to the requirement for slaughter of animals that are in fact infected with Bang's disease. These defendants are ready and willing to enter into such a method of control as is suggested by No. 3

hereinabove pleaded (that is, test and retention of re-
actors with calfhood vaccination) with the view to
gradual elimination of Bang's disease, without the great
economic loss involved by the slaughter of reactors.
These defendants state that if Bang's disease is prevalent
to anything like the extent suggested by, and contended
for by representatives of the State of Arkansas, com-
pliance with the applicable regulations for the slaughter
of reactors would drive them out of business and eliminate
a useful and necessary source of food supply to the City
of Jonesboro. To base a requirement for slaughter upon
any method of diagnosis so inaccurate as the blood ag-
glutination test is wholly unjustified and contrary to
law.''

The testimony took a wide range and many divergent
opinions were expressed, and there were offered in evi-
dence numerous newspaper and magazine articles written
by persons who professed to have expert knowledge on
the cause, effect and treatment of Bang's disease. Much
of this testimony relates to the question, whether un-
dulant fever is commonly contracted by humans being by
drinking milk containing the germ of the disease, such
germs being transmitted from cows suffering from
Bang's disease. Without reviewing this testimony, or
passing upon the question of its preponderance, it may
be said that testimony was given by witnesses highly
intelligent, and of wide experience, as to the cause of
undulant fever, and of the proper methods of preventing
its spread, to the effect that undulant fever could be,
and is, contracted by the consumption of milk produced
from cows suffering from Bang's disease. It may not
therefore be said that the State Board of Health acted
arbitrarily in the adoption of regulations designed and
intended to prevent the contraction of a disease by human
beings.

As has been said, the Bureau of Animal Industry
now recommends three different methods for the control
of Bang's disease, and there is much conflicting testi-
mony as to the relative merits of these methods. The
court found all questions of fact in favor of the State,

and directed that the defendant owners submit their cows to a proper inspection, but held that an inspection under regulations which required or permitted the slaughter of reactors was unreasonable and arbitrary and therefore void and that the regulations of the State Board of Health conferred this power of slaughter, and that the dairymen would not be required to submit their cows to inspection until the regulations were so amended as to divest the inspectors of this power.

The court held, however, that the provision for slaughter or destruction is separable from other provision of the regulations and that when the provision for slaughter is eliminated, the dairymen could and would be prohibited from selling their milk and milk products until they had complied with the amended regulations. From this decree the State has appealed and the dairymen have prosecuted a cross appeal.

The State Board of Health disclaims having the intention to have slaughtered any cows, even those definitely found to be reactors. The applicable regulations found in the printed Rules and Regulations of the State Board of Health provide in § 2, of Chapter 10 of these regulations as follows:

"All milk and milk products consumed raw shall be from herds or additions thereto which have been found free from Bang's disease, as shown by blood serum test for agglutinins against Brucella abortus made in a laboratory approved by the State Health Officer. All such herds shall be retested at least every twelve months and all reactors removed from the herd. A certificate identifying each animal by number, and signed by the laboratory making the test, shall be evidence of the above test.

"Cows which show an extensive or entire induration of one or more quarters of the udder upon physical examination, whether secreting abnormal milk or not, shall be permanently excluded from the milking herd. Cows giving bloody, stringy or otherwise abnormal milk, but with only slight induration of the udder shall be

excluded from the herd and their milk shall be discarded until reexamination shows that the milk has become normal.''

Evidently the regulation quoted was confused with § 3 of the Arkansas Livestock Sanitary Board rules.

We find it unnecessary to determine whether a regulation requiring or permitting the slaughter of reactors would be void as unreasonable, for the reason that we find no such rule of the State Board of Health. The court was therefore in error in requiring the elimination of this rule as a condition precedent for requiring the defendants to submit their cows for inspection. Jurisdiction of the cause was retained for the purpose of determining whether or not the demand for inspection and test authorized under the decree has been complied with by the defendants, and they have appealed from that order for the reasons herein stated.

The regulations here under review contemplate that if the blood test indicates that a cow is a reactor, it shall be segregated from its herd and it shall be so branded as to indicate that it is a reactor and appellees say this is not the proper method to control the disease, and that vaccination is the only reasonable and logical method of controlling the disease.

Much testimony was offered supporting and contradicting this contention, but it is not our function to pass upon the relative merits and efficacy of the different methods of controlling Bang's disease. Segregation of the infected animal is one of the methods recommended by the Bureau of Animal Industry of the United States Dept. of Agriculture.

Cases are almost beyond numbering which deal with these questions many of which are cited in the annotated cases found in 18 A. L. R. 219; 80 A. L. R. 1212 and 1225; 130 A. L. R. 606. The cases therein cited are to the general effect that the Legislature may constitutionally confer on boards of health the power to enact sanitary orders such as, to prevent the sale of adulterated or contaminated milk, which order shall have the force

of laws within the district over which their jurisdiction extends. And the annotated cases above cited are also to the effect that if the rules and regulations adopted for the protection of the public health are not arbitrary and unreasonable, the courts will not inquire whether some other method might not have been adopted which is more efficacious. Otherwise stated the courts consistently hold that the relative merits of different methods to be employed will be left to the Legislature or to the administrative tribunals created by the Legislature and that the method approved will be sustained by the court as long as it is an approved method, even though other methods are more generally employed. All of which is to say that the courts will not substitute their judgment for that of the administrative boards when the action of the boards is not arbitrary or unreasonable.

The concession is made by appellees, as indeed it must be, that the Legislature may delegate authority to a state board to promulgate reasonable regulations designed to protect the public health. If the subject were in doubt notwithstanding the infinite number of cases so holding, our own cases would be conclusive of the existence of this power. *Brazil* v. *State,* 134 Ark. 420, 204 S. W. 622; *Allen* v. *Ingalls,* 182 Ark. 991, 33 S. W. 2d 1099; *Davis* v. *State,* 126 Ark. 260, 190 S. W. 436.

We find and hold that the regulation that reactors be segregated and be so branded as to indicate that they were found to be reactors is not an unreasonable or arbitrary rule.

The argument that the granting of an injunction restraining a criminal act is not properly within the scope of equitable jurisdiction is answered by the opinion in the recent case of *State ex rel. Williams* v. *Carston,* 208 Ark. 703, 187 S. W. 2d 327, where, to quote a headnote, it was held "That the act constituting a nuisance is also a crime does not deprive a court of equity of jurisdiction to abate the nuisance." The leading case of *People ex rel. Kerner* v. *Hulls,* 355 Ill. 412, 189 N. E. 346, was one in which the state's attorney sought to restrain the owner of certain cattle from interfering with the agent

of the Department of Agriculture in making a tuberculin test of such cattle. In granting the relief prayed the Supreme Court of Illinois said that while as a general rule equity will not take jurisdiction to enjoin threatened illegal acts which constitute a breach of the criminal law, yet when the acts complained of constitute a nuisance, or danger to the public health, or the public welfare, and a more complete remedy is afforded by injunction than by criminal proceedings, a court of equity will on request of the duly constituted authority grant relief by injunction. Evidently the impending prosecution has been held ineffective to compel the dairymen to submit their cows to the required inspection, as they are still refusing to submit to the inspection. An injunction restraining them from selling their milk in Jonesboro, or elsewhere, will no doubt prove more effective.

Upon the contention that paragraph 15 of § 2 of Act 114 of 1941 has deprived the State Board of Health of its power to make regulations relating to the sale of milk in cities of the first and second class, but little needs to be said. This paragraph has been quoted above.

We think it apparent that the purpose and proper construction of this legislation is that it supplements and does not supplant the efforts of the State Board of Health to protect the public health and the State Board may continue to perform its functions, but not to the exclusion of the action of the officers of the City of Jonesboro.

Upon the whole case we conclude that the regulations of the State Board of Health are reasonable and a valid exercise of the state's police power, and that a proper method to enforce them is to prevent the sale of milk produced in their violation. The decree of the court below will therefore be reversed and the cause will be remanded with directions to enjoin appellees from selling milk in Jonesboro, or elsewhere, until they have complied with these regulations.