ARKANSAS STATE BOARD OF ARCHITECTS *v.* CLARK.

5-988                                         291 S. W. 2d 262

Opinion delivered July 11, 1956.

[Rehearing denied July 2, 1956.]

*Mehaffy, Smith & Williams* and *B. S. Clark,* for appellant.

*Fietz & McAdams* and *Barrett, Wheatley, Smith & Deacon,* for appellee.

PAUL WARD, Associate Justice.   The appellant is the Arkansas State Board of Architects, created by Act 270 of the Acts of Arkansas for 1941 (Ark. Stats. § 71-301 et seq.)   Appellant will hereafter be referred to as the Board.   Appellees, T. J. Clark and C. L. Adkison are residents of Jonesboro, Arkansas.   Two separate suits were filed in the chancery court, one against each of the above named appellees, but the allegations and the issues in both suits are essentially the same and we shall hereafter treat them as one suit against both appellees.

On May 25, 1955 the Board filed a complaint against T. J. Clark stating:

"The defendant prepared plans and specifications for the construction of an elementary school in Nettleton, Craighead County, Arkansas for the Nettleton-Phillips School District, the construction cost of which will amount to approximately $60,000.00. The defendant is not licensed to practice architecture in Arkansas as required by the provisions of the Arkansas Architectural Act, Act 270 of 1941, Section 71-301 et seq., Arkansas Statutes 1947, annotated."

The prayer was to enjoin Clark "from the further preparation of any plans or specifications pertaining to the construction" of the said school building; and "from practicing architecture in any manner in the State of Arkansas without first being licensed as required by law."

On August 15, 1955 Clark filed his Motion to Dismiss for the reasons that: (a) The complaint fails to state grounds upon which injunctive relief is authorized; (b) The plaintiff has an adequate remedy at law, and; (c) The plaintiff seeks to enjoin an alleged crime.

On October 31, 1955 the cause was submitted to the trial court on appellees' Motion to Dismiss, no testimony being taken. The trial court found that Act 270 of 1941 provides substantial legal remedies for its own enforcement, that it contains no provision for injunctive relief against violators, and accordingly dismissed the complaint.

Act 270 mentioned above contains, among other provisions, the following: Division II Section 1 states that "in order to safeguard life, health and property, no person shall practice architecture in this State . . ." unless he shall have secured a license to do so. Division VII Section 1 provides that any person who shall practice or offer to practice the profession of architecture in this state without being registered, etc. shall be guilty of a misdemeanor and shall, upon conviction, be sentenced to pay a fine of not less than $50 nor more than $500 or suffer imprisonment for a period not exceeding three

months, or both, each day of such unlawful practice to constitute a distinct and separate offense.

This court has had many occasions to consider the power of the chancery courts to issue injunctive relief in situations somewhat similar to those presented by this case. Some of the cases in which injunctive relief has been upheld by this court are *Van Hovenberg* v. *Holman*, 201 Ark. 370, 144 S. W. 2d 718; *Ritholz* v. *Arkansas State Board of Optometry*, 206 Ark. 671, 177 S. W. 2d 410; *Meyer* v. *Seifert*, 216 Ark. 293, 225 S. W. 2d 4, and *Arkansas Bar Association* v. *Union National Bank*, 224 Ark. 48, 273 S. W. 2d 408.

Two of the cases in which this court has denied injunctive relief are *State* v. *Vaughan*, 81 Ark. 117, 98 S. W. 685, and *State, Ex Rel. Robinson, Prosecuting Attorney* v. *Crown*, 211 Ark. 67, 199 S. W. 2d 323.

Our decisions seem to be in harmony on certain general principles regarding the power of courts of equity in the injunctive field. In the *Vaughan* case, supra, the following statement was approved: "It is no part of the mission of equity to administer the criminal law of the state . . . except so far as the same may be in-. cidental to the enforcement of property rights, and perhaps other matters of equitable cognizance." Again it was stated: "A chancellor has no criminal jurisdiction. Something more than the threatened commission of an offense against the law of the land is necessary to call into existence the injunctive powers of the court. There must be some interferences, actual or threatened, with property or rights of a pecuniary nature; but when such interferences appear the jurisdiction of a court of equity arises and is not destroyed by the fact that they were accompanied by or are themselves violations of the criminal law." Substantially the same pronouncements were made in the *Meyer* case, supra, after which the court quoted with approval, " 'On the other hand, if the public nuisance is one touching civil property rights or privileges of the public or the public health is affected by a physical nuisance or if any other ground of equity jurisdiction exists calling for an injunction, a chancery court

will enjoin notwithstanding the act enjoined may also be a crime. The criminality of the act will neither give nor oust jurisdiction in chancery.' "

In this case appellant stresses the fact that, even though property rights may not be endangered, the health and safety of the general public are in danger, calling attention to the purpose stated in said Act 270 as set forth above. Appellant recognizes in its brief that it is necessary to show that ''(a) the illegal practice of architecture amounts to a public nuisance, and (b) the illegal practice affects public health and safety.'' It is noted here that appellant merely alleges that Clark prepared plans and specifications for the construction of the school building and that he was not licensed to practice architecture in Arkansas as required by said Act 270, there being no allegations that Clark was incompetent to prepare such plans or that his conduct created a nuisance or in any way endangered the public health and safety.

Our interpretation of the cases above mentioned in which injunctive relief was granted does not justify appellant's contention for a reversal in this case. The cases mentioned are distinguishable from the case under consideration because of the facts or the law involved. In the *Van Hovenberg* case, supra, appellee was attempting to build a filling station in the City of Texarkana in violation of a city ordinance and injunctive relief was granted, after the taking of testimony, on the ground that individual property rights were involved. In the *Ritholz* case, *supra,* appellant was enjoined from practicing optometry in violation of Act 94 of 1941. The injunction was issued after evidence was taken and the case decided on its merits. Said Act 94, regulating the practice of optometry, provided in Section 8 that the Board had a right to bring a suit to enforce or restrain the violation of any provisions of the act, and Section 15 provides that any violation of the act may be enjoined in the chancery courts of this state. Neither of these provisions appears in the act under consideration. This court approved an injunction in the *Meyer* case, *supra,* after a hearing on the facts, against one attempt-

ing to erect a nonfireproof building within the limits of the fire zone district. The decision rested on a substantial showing of property damage to the plaintiff's property and adjoining property through an increased fire hazard. In the *Arkansas Bar Association* case, supra, injunctive relief was granted on the merits after a full hearing on testimony and the question of the court's power to grant injunctive relief was not raised in the trial court or in this court.

Since appellant makes no allegation that the acts complained of in this case constitute a nuisance or a threat to the public health and welfare, it must rely upon the wording of the Act itself to supply this deficiency. However Act 270 does not declare the illegal practice of architecture to be a nuisance, and even if it did that **alone** would not necessarily make it such. In a long line of cases this court has held, with reference to municipalities, that the declaration in a city ordinance that certain acts constitute a nuisance does not make them such in fact. In *Ward* v. *City of Little Rock,* 41 Ark. 526, at page 529, this court said: "The ordinance prohibiting the working of convicts in the city and declaring the same a nuisance, was wholly ineffectual for any purpose." At page 530 we said: "But this does not authorize the council to condemn any act or thing, as a nuisance, which, in its nature, situation or use does not come within the legal notion of a nuisance." In *DeWitt* v. *Lacotts,* 76 Ark. 250, 88 S. W. 877, this court said: "Those statutes endow municipal corporations with power to prevent and abate nuisances, but they do not authorize the declaration of anything to be a nuisance which is not so in fact." Similar declarations were made in *Lonoke* v. *Chicago, Rock Island & Pacific Railway Company,* 92 Ark. 546, at page 551, 123 S. W. 395; *Town of Dardanelle* v. *Gillespie,* 116 Ark. 390, at page 393, 172 S. W. 1036; *Bryan* v. *City of Malvern,* 122 Ark. 379, at page 381, 183 S. W. 957; *Merrill* v. *City of Van Buren,* 125 Ark. 248, at page 254, 188 S. W. 537; *Wilkins* v. *City of Harrison,* 218 Ark. 316, at page 320, 236 S. W. 2d 82, and; *City of Springdale* v. *Chandler,* 222 Ark. 167, at page 168, 257 S. W. 2d 934.

After a careful consideration of the various expressions by this court on questions similar to the one presented here, we have concluded that the chancellor was right in refusing injunctive relief on the allegations contained in appellant's complaint, for the principal reason that Act 270 itself provides an adequate remedy. If Clark and Adkison are in fact violating the provisions of the act under consideration they are subject to a fine up to $500 or 90 days imprisonment, and each day of violation constitutes a separate and distinct offense. This, in effect, is the holding in the case of *State, ex rel. Robinson, Prosecuting Attorney* v. *Crow,* supra. There, the prosecuting attorney filed a suit to enjoin the State Board of Chiropractic Examiners from issuing licenses by reciprocity to applicants to practice in that field without requiring such applicants to present a certificate of ability in the basic sciences. A demurrer was filed to the complaint, and it was sustained by the trial court. Upon appeal this court sustained the action of the trial court. The act involved in that case·was No. 147 of the Acts of 1929 which provided penalties for its violation. After setting out the penalties provided for in the act this court stated:

"So it is manifest that the Basic Sciences Act provides a plain and adequate remedy at law for the enforcement of its provisions without any necessity of applying to a court of equity to restrain a violation of the Act. Assuming without deciding that the State Board of Chiropractic Examiners is in error in licensing by reciprocity applicants from other States to practice chiropractic in this State without first requiring the presentation to it by such applicants of a certificate from the Basic Sciences Board, we think appellant should have pursued the enforcement remedy provided in the Act." Following the above the court said: " . . . the act prescribed the method of enforcement by prosecution and there is no necessity of resorting to the extraordinary remedy by injunction."

In the well considered case of *Smith* v. *Hamm,* 207 Ark. 507, 181 S. W. 2d 475, this court, in considering the power of chancery courts to grant injunctive relief in

nuisance cases, made announcements which we think are applicable to the case under consideration. In that case certain parties sought to enjoin the activities of other parties which were punishable by the criminal law but which were alleged to be a nuisance. The trial court sustained a demurrer to the complaint. This court, in sustaining the action of the trial court on the ground that injunctive relief was not proper, made these statements: ''The fact that appellee's conduct was of a character to constitute a nuisance is not within itself sufficient to authorize the use of an extraordinary process of injunction for the abatement thereof.'' Following the above quote the court cited cases and quoted with approval the general rule found in 28 Am. Jur. 339, Injunctions, § 150. Contained in this quotation is the following: ''In order, however, to obtain relief by injunction against the commission of acts of a criminal character, on the ground of injury to the property rights of an individual, the court will require that the *complainant clearly show such facts and circumstances in the particular case* as will justify the court in granting the relief desired.'' (emphasis supplied). While appellant in the case under consideration makes it clear that it is not relying on an injury to the property rights of an individual but on the ground of an injury to the public safety and welfare, yet we see no reason why it should not also be required to clearly show facts and circumstances which would entitle it to injunctive relief. The court's statement in the *Hamm* case is, we think, applicable to this case: ''The complaint here failed to directly allege any such injury or damage, and such cannot reasonably be inferred from the facts which were alleged.''

We see no merit in appellant's suggestion that we treat its petition for injunctive relief as a petition for a declaratory judgment. The issue in which appellant is interested, and the issue before this court, is not the constitutionality of said Act 270 or the interpretation of any of its provisions. The issue here is whether appellant's complaint contains sufficient allegations to invoke equitable jurisdiction, and our decision would necessarily be the same regardless of the method of approach.

It follows from what we have said above that the decree of the trial court must be, and it is hereby, affirmed.

Affirmed.

Justices HOLT and ROBINSON dissent.

SAM ROBINSON, Associate Justice. The General Assembly of this State, in an attempt to regulate the practice of architecture and thereby prevent the construction of buildings that might constitute a hazard to the public, at its 1941 Session, adopted Act No. 270, Ark. Stats. § 71-301. The preamble to the Act is as follows: "Whereas, in order to safeguard life, health and property, it is important that the practice of architecture in this State should be regulated." The Act provides for the licensing of architects, and makes it a misdemeanor for any one to practice architecture without being licensed. There are certain exemptions, among which are: "Buildings that are constructed at a cost, not including site, of not to exceed $10,000.00 provided said buildings are not intended, or adaptable, for public assembly or other occupancy that would be hazardous to said occupants in event of structural failure, fire or panic by said occupants." The Emergency Clause provides: "That inasmuch as designs for the construction of public and private works within the State of Arkansas are in progress, and that the design of all such public and private works, within the specific regulation of this Act, ought to be regulated in order to safeguard life, health, and property, etc."

Of course, it is the duty of all law enforcement officers to enforce the Act. But the Act consists of sixteen numbered sections and, from a practical standpoint, if the Act is enforced at all it will be due to the efforts of the State Board of Architects created by the Act. A constable, or a policeman, or a prosecuting attorney does not ordinarily examine the plans and specifications of a school being constructed in the community, to determine if such plans and specifications were prepared by a licensed architect. In the case at bar, the State Board of Architects discovered that appellee Clark was preparing

plans and specifications for a public school, the construction of which would cost about $60,000.00; that the appellee Adkison was going to supervise the construction of the building in an architectural capacity. The Board knew that neither of these men was a licensed architect, and that the lives of many children were thereby endangered. The principal purpose of Act 270 of 1941 was to prevent the very thing from happening that occurred here. It was the duty of the State Board of Architects to prevent the school from being constructed from plans prepared by some one other than a licensed architect. In an attempt to do its duty, the Board filed this suit, asking that appellees, who are not licensed architects, be enjoined from practicing architecture. Apparently, the Board has no other recourse to prevent the unlawful construction of the school. If the appellees had been deterred by the threat of the conviction of a misdemeanor for violating Act 270, this suit for an injunction would have been unnecessary.

The situation is exactly like that described in *Meyer* v. *Seifert*, 216 Ark. 293, 225 S. W. 2d 4. There, the court said: "It is characteristic of most instances in which injunctions against criminal acts are sustained that the threat of punishment after the event will not have a very strong deterrent effect upon the offender, as to some acts. This is because the criminal punishment is small and unimportant as compared with the benefits or profits expected to be gained from the criminal act. Oftentimes the act is a recurrent or continuing one, necessitating numerous successive petty prosecutions if the regular criminal procedure is to be followed. Frequently the acts are such that it is difficult to get jury convictions, either because local juries are prejudiced against the enforcement of the particular law involved, or for some other equally practical reason." And also, what Judge Frank Smith said, in *State, ex rel. Hale, Prosecuting Attorney* v. *Lawson*, 212 Ark. 233, 205 S. W. 2d 204, is applicable: "Evidently the impending prosecution has been held ineffective to compel the dairymen to submit their cows to the required inspection, as they are

still refusing to submit to the inspection. An injunction restraining them from selling their milk in Jonesboro, or elsewhere, will no doubt prove more effective.'' In the case at bar, there is no adequate remedy at law. Although, subsequent to completion of construction of the school, Clark and Adkison would be convicted of a misdemeanor, it is not likely that the school building will be torn down, even though it may be very dangerous to the children attending the school.

The majority distinguish *Meyer* v. *Seifert, supra,* on the ground that in that case property rights were involved; but here, human lives are involved, and it was pointed out in the Meyer case that an injunction would lie if the public health were affected. When lives of little school children are endangered, it cannot be said that public health is not affected. This court has repeatedly held that where the public health is affected an injunction will lie, although the act, which is sought to be restrained by the injunction, is a crime.

In *Van Hovenberg* v. *Holman,* 201 Ark. 370, 144 S. W. 2d 718, the court said: ''Appellees insist that, since an ordinance pronounces penalty for violation, appellants' rights are thereby circumscribed, and injunction does not lie. We cannot assent to this view. The ordinance prohibits erection and operation without the permit, and fixes a penalty of not more than $100 for violation. But the primary and fundamental purpose of the ordinance was to prohibit operation—not to punish. It is definitely settled that equity will not interfere to stay proceedings in a criminal matter. Here, however, the relief sought is abatement of unauthorized conduct. If it should be held that penalty of the ordinance deprived equity of jurisdiction, then any person desiring to proceed in violation of law could pay the maximum fine and become immune thereafter except as to damages. This is not the law.''

In *Ritholz* v. *Ark. State Board of Optometry,* 206 Ark. 671, 177 S. W. 2d 410, the court said: ''The action is not one to enjoin the commission of a crime, as such.

Its purpose, primarily, is to prevent the illegal practice of optometry, rather than to penalize the practitioner. If the latter alone were the object, Chancery would be without jurisdiction. The rule, as stated in 28 American Jurisprudence, Injunctions, § 148, at page 338, is that acts amounting to a public nuisance will be restrained if they affect the civil or property rights or privileges of the public, or endanger the public health, regardless of whether such acts are denounced as crimes.''

The language of the court in the *Ritholz* case is peculiarly applicable to the situation in the case at bar. The primary purpose of this suit is to prevent the illegal practice of architecture rather than to penalize the practitioner. The complaint alleges that appellees do not have a license to practice architecture, but are doing so. This, in itself, amounts to an allegation that the appellees were committing a nuisance.

In *Hudkins* v. *Arkansas State Board of Optometry,* 208 Ark. 577, 187 S. W. 2d 538, the court quoted with approval from Chief Justice Hill's opinion in *State* v. *Vaughan,* 81 Ark. 117, 98 S. W. 685: '' '. . . if the public nuisance is one touching civil property rights or privileges of the public, or the public health is affected by a physical nuisance, or if any other ground of equity jurisdiction exists calling for an injunction, a Chancery Court will enjoin, notwithstanding the act enjoined may also be a crime.' '' And the court further stated, in the *Hudkins* case: ''As to the subject matter from which the case at bar proceeds, there is, upon the one hand, clear distinction between criminal conduct and punishment, while upon the other hand there is the public's right of protection against continuing practices of unlicensed individuals who persist in an activity legislatively found to be inimical to the common welfare.''

In *State, ex rel. Atty. Gen.,* v. *Karston,* 208 Ark. 703, 187 S. W. 2d 327, the court held that it was proper to enjoin Karston from operating a gambling house although the operation of a gambling house in the State of Arkansas is a felony.

In *Ark. Bar Assn.* v. *Union National Bank,* 224 Ark. 48, 273 S. W. 2d 408, the Bank was enjoined from engaging in the practice of law without a license, when to do so was a violation of the law.

In *Meyer* v. *Seifert, supra,* Judge Leflar said: "A second contention urged by the defendants is that equity it without power, or should not exercise the power, to enjoin maintenance of the prohibited structure. The argument is that the ordinance prescribes criminal punishments, making violation a misdemeanor punishable by fine of not less than $10 nor more than $100 for each day of violation, and that this remedy is exclusive. That equity will not act to restrain ordinary violations of the criminal law, but will leave the task of enforcing the criminal laws to courts having criminal jurisdiction, is basic learning in our legal system. But is equally basic that if grounds for equity jurisdiction exist in a given case, the fact that the act to be enjoined is incidentally violative of a criminal enactment will not preclude equity's action to enjoin it.

"In one of the most publicized cases that ever arose in Arkansas, Chancellor Martin enjoined the holding at Hot Springs of a world championship heavyweight prize fight between James J. Corbett and Robert Fitzsimmons. *State ex rel. Atty. Genl.* v. *Corbett, Fitzsimmons, et al.,* Martin's Chanc. Decisions 366." . . . Judge Martin is then quoted with approval, as follows: "If the public health is affected by a physical nuisance, or if any other ground of equity jurisdiction exists calling for an injunction, a chancery court will enjoin, notwithstanding the act enjoined may also be a crime. The criminality of the act will neither give nor oust jurisdiction in chancery." 'Accord: *Hudkins* v. *Arkansas State Board of Optometry,* 208 Ark. 577, 187 S. W. 2d 538; *State ex rel. Atty. Genl.* v. *Karston,* 208 Ark. 703, 187 S. W. 2d 327; *State ex rel. Hale* v. *Lawson,* 212 Ark. 233, 205 S. W. 2d 204. Hundreds of cases in other states are to the same effect. See *State ex rel. Smith* v. *McMahon,* 128 Kans. 772, 280 Pac. 906, 66 A. L. R. 1072 (injunction against

widespread practice of criminal usury); *Fitchette* v. *Taylor,* 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356 (injunction against unauthorized practice of law); *State ex rel. Crow* v. *Canty,* 207 Mo. 439, 105 S. W. 1078, 15 L. R. A., N. S. 747, 123 Am. St. Rep. 393, 13 Am. Cas. 787 (injunction against illegal bull fights).''

In *Arkansas State Board of Architects* v. *Bank Building & Equipment Corp. of America,* 225 Ark. 889, 286 S. W. 2d 323, this court held that under the statute involved here the appellee could be enjoined from practicing architecture.

In my opinion, the allegations that an unlicensed architect was preparing plans and specifications for a public school building, that the construction of the building would be supervised by an unlicensed architect, and that the building would be completed under such an arrangement unless the defendants were enjoined, are good allegations as against a demurrer.

For the reasons set out herein, I respectfully dissent.

Mr. Justice HOLT joins in this dissent.