## ARKANSAS STATE BOARD OF PHARMACY
### *v.* ANTHONY TROILETT ET AL

5-5454 463 S. W. 2d 383

Opinion delivered February 22, 1971

*Warren & Bullion,* for appellant.

*Guy H. Jones, Phil Stratton* and *Guy H. Jones, Jr.,* for appellees.

LYLE BROWN, Justice. The Arkansas State Board of Pharmacy, by petition in chancery, sought to enjoin the dispensing of rubber prophylactics (condoms) from vending machines located in four filling stations in Conway, operated by Anthony Troilett and his co-defendants, appellees here. The merchants defended on the ground that Act 189 of 1943, the prophylactic law, is unconstitutional. The chancellor held Act 189 constitutional but denied the injunction "because of the criminal section of the Act and further because of the difficulty in the enforcement of the injunction." We are asked to pass on the constitutionality of the Act and also to reverse the chancellor's refusal to grant the injunction.

The constitutional question can be disposed of in short order. A determination of the constitutionality of the Act is not necessary to a disposition of this case. It is therefore our duty to avoid the question. *Wilson*

*Lumber Co.* v. *Hughes,* 245 Ark. 168, 431 S. W. 2d 487 (1968).

Act 189 is codified in Ark. Stat. Ann. § 82-944-954 (Repl. 1960). It is there provided that rubber prophylactics shall not be sold except by those possessing a license from the State Board of Pharmacy (excluding those licensed to practice medicine or osteopathy); that retail licenses shall be issued only to retail drug stores; and that it is a misdemeanor punishable by fine and/or imprisonment for violation of the Act. In addition to the criminal penalties it is provided in Ark. Stat. Ann. § 72-1039 (Repl. 1957) that "The State Board of Pharmacy, may in its discretion, in addition to the various remedies now provided by law, apply to a court having competent jurisdiction over the parties and subject matter for a writ of injunction to restrain repetitious violations of the pharmacy laws of this State."

First, it should be pointed up that the recited injunction section does not grant a *right* of injunction. It simply says the State Board *may apply* for an injunction to restrain repetitious violations. In a number of instances there are statutes which give state agencies the *right* to a writ of injunction in equity. For example, the State Board of Dental Examiners is entitled to the writ against one who practices dentistry or dental hygiene without a license. Ark. Stat. Ann. § 72-542 (Repl. 1957).

As we read the penalty section of Act 189 and the injunction provision in § 72-1039 together, we perceive a very logical legislative intent. The basic enforcement provision is the severe penalties recited in Act 189. Then if a violator who, having been punished, persists in repetitive violations, the Board may apply for an injunction. There is no evidence in this record that any of these appellees have ever been prosecuted for any violation of Act 189.

Additionally, the chancellor gave some very logical reasons for his conclusions:

The court finds that although defendants have admittedly violated the Act an injunction should be denied because of the criminal section of the act and further because of the difficulty in enforcing the injunction. The court finds that the plaintiff has an adequate remedy at law through the crimianl processes and that widespread violation of the Act should be suppressed through the processes of the criminal courts rather than through the granting of an injunction which would bind only the defendants presently before the court in this case.

The undisputed evidence in the case showed that rubber prophylactics are commonly sold throughout the State by vending machines. If we here say that the chancellor should have granted the injunction then we are saying to the twenty-three chancellors in this State that they must burden their dockets to enforce the criminal law against this type of contraceptive. We cannot believe that such was the legislative intent when § 72-1039 was enacted, especially in view of the fact that the injunctive section refers only to "repetitious violations." Criminal courts are available to every city and hamlet in the State, whereas some chancellors have as many as nine counties; hence the local courts, such as municipal courts, are in much better position to process the litigation. The most that can be said of the jurisdiction of the chancellor is that the granting of the injunction was discretionary and for the reasons stated we cannot say he abused his discretion.

We are not unaware of a multitude of cases wherein our chancellors have appropriately granted injunctions to prohibit an unlawful act. They generally fall into three catagories, (1) cases wherein by statute the granting of the injunction is mandatory, (2) cases in which there is no adequate remedy at law, and (3) cases wherein the granting of the injunction is discretionary.

Before we will disturb the discretion exercised in the last category we must be convinced that the court has manifestly abused its discretion. *Price* v. *Edmonds,* 231 Ark. 332, 330 S. W. 2d 82 (1959).

Finally, the appellant carried a heavy burden of proof. In order to obtain relief by injunction against the commission of acts of a criminal character "the court will require that the complainant clearly show such facts and circumstances in the particular case as will justify the court in granting the relief desired." *Arkansas State Board of Architects* v. *Clark,* 226 Ark. 548, 291 S. W. 2d 262 (1956). In the case at bar the complainant did not meet that test.

Affirmed.

HARRIS, C. J., dissents.

CARLETON HARRIS, Chief Justice, dissenting. With the certain knowledge that I shall be deemed an "old fogy" in some quarters, I still desire to express my dissent in this case. Let it be borne in mind that there is no dispute but that appellees are violating the law; they admitted it. There was no pertinent fact remaining to be proved. Despite this circumstance, the Chancery Court refused to grant an injunction because a criminal penalty is provided in the act violated, Ark. Stat. Ann. § 82-944-953 (Repl. 1960), and "because of the difficulty in the enforcement of the injunction". I do not agree that the criminal penalty provides adequate means for enforcement of the law. Let us say that an individual is tried and fined in a Municipal, or Justice of the Peace, Court; he is entitled to appeal to the Circuit Court, and to an entirely new trial before that tribunal. Let us say that he is again convicted. He is then entitled to appeal to the Supreme Court. Thus, when the conviction is finally affirmed, a year or year and a half has elapsed since his arrest for the offense. Not only that, but these trials and appeals relate to only one offense. In the meantime he may continue to violate the law, and unless he is arrested and tried every day (which would really burden the dockets of the Municipal and Circuit Courts if we multiply this one offender by the dozens of others who are likewise ignoring the statute) the violations have not been stopped. One of the main purposes of an injunction is to stop "repetitious violations", for the Chancery Court, unlike the criminal court, has

the power to "stop the violation *before it is ever committed*". If an injunction is violated, the court can then *immediately* punish by contempt proceedings. Furthermore, if an appeal is taken, *the injunction, if so ordered by the trial court, remains in effect until after the appeal is disposed of.* See *Gallup* v. *St. Louis, I. M. & So. Ry. Co.,* 158 Ark. 624, 251 S. W. 30, where we said, "The judgment of the chancery court was right. It is well settled that an injunction is not such a judgment as can be stayed by filing a supersedeas bond". But even if a supersedeas bond were permitted, I cannot visualize any defendant, or bondsman, entering into a bond where the defendant has admitted committing the acts for which he is enjoined.

The majority say that the statute here in question does not grant the right of injunction but simply provides that the State Board may apply for an injunction to restrain repetitious violations. This, to me, is nothing more than a play on words. In the Florida case of *Florida Industrial Commission* v. *Hurlbert,* 114 So. 2d 209, the statute in question also used the term "may" rather than "shall", but the Florida Court (District Court of Appeal of Florida, First District) took an entirely different view from that taken by the majority in this case. From the opinion:

"The question here is: Does the statute give the Circuit Judge, as a matter of discretion, the right to deny the injunction, on the ground that the plaintiff could also proceed criminally, where the complaint adequately charges the violation of the statute and the defendant interposes no defense to the complaint, but allows a decree pro confesso to be entered against her?

The general rule is that equity has no jurisdiction to enjoin the commission of a crime, but the exception is that equity may grant an injunction when the legislature has specifically, or by clear implication, authorized the injunctive process as a means of restraining violation of a statute. (citing cases)

It is therefore apparent, and the attorneys for both

parties agree, that the Circuit Judge could have granted the injunction in the instant case.

It is our opinion that this discretion of the Circuit Judge can be exercised only when the defendant interposes a defense and presents evidence to the court which enables the court, in the exercise of a reasonable discretion, to conclude that the facts of the particular case are such that it would be inequitable, unjust or unduly harsh for the injunctive remedy to be granted at this time. When no defense is interposed and no facts as to this particular case are presented by the defendant to the court, there is then no basis for the exercise of a reasonable discretion.

If the court can refuse the injunction without such evidence, it would mean that the court, depending on the legislative views of the judge concerned, could decide that the legislature was ill-advised in enacting this statute and that injunction should not be granted in cases where the petitioner has a remedy to proceed criminally against the violators. * * * *

Reversed and remanded with directions to enter a decree granting injunctive relief in accordance with the prayer of plaintiff's complaint."

Here, there is no contention that the acts were not committed, and, under the same reasoning employed by the Florida Court, I see no basis for the exercise of the trial court's discretion. Applying the fourth paragraph of the quoted opinion, and employing the language used to the case presently before us, let us ask, "Would an injunction against the sale of these condoms by vending machine be inequitable? Would an injunction be unjust? Would it be unduly harsh?" To me, the question is but to answer it, for I can see no inequity, injustice, or undue harshness, in ordering a person to refrain and desist from violating the law.

We likewise said in *Meyer* v. *Seifert,* 216 Ark. 293, 225 S. W. 2d 4:

"The most frequently quoted statement of the rule in Arkansas appears in *State* v. *Vaughan*, 81 Ark. 117, 126, 98 S. W. 685, 690, 118 Am. St. Rep. 29, 11 Ann. Cas. 277, 7 L. R. A., N. S. 899, where after denying the injunction in the particular case, Chief Justice Hill added: 'On the other hand, if the public nuisance is one touching civil property rights or privileges of the public, *or the public health is affected* [my emphasis] by a physical nuisance, or if any other ground of equity jurisdiction exists calling for an injunction, a chancery court *will* [my emphasis] enjoin, notwithstanding the act enjoined may also be a crime. The criminality of the act will neither give nor oust jurisdiction in chancery!' "

Entirely aside from the matters already discussed, I feel that permitting young boys or young men to regularly and consistently see this merchandise displayed in rest rooms, encourages immorality. Rest rooms are frequented by persons of all ages. All view these vending machines. My sentiments are expressed in the Virginia case of *Cavalier Vending Corp. et al* v. *State Board of Pharmacy et al*, 79 S. E. 2d 636. There the Supreme Court of Appeals of Virginia stated:

"Where these devices are sold only by licensed retail outlets, as permitted by the Act, improper use will be discouraged. It may be reasonably assumed that the sale of such devices through vending machines placed in public rest rooms frequented by people of all ages might prove detrimental to morals, particularly of young people. It unnecessarily places before them a temptation fraught with great danger. Young people may be tempted to buy from this 'silent salesman' for immoral purposes, whereas they would not make such purchase from a clerk in a licensed retail outlet. * * * *

One does not have to inquire as to the motives for this legislation. The reasons for its passage are obscure only to those who do not care to see."

The majority say:

"The undisputed evidence in the case showed that rubber prophylactics are commonly sold throughout the State by vending machines. If we here say that the

chancellor should have granted the injunction then we are saying to the twenty-three chancellors in this State that they must burden their dockets to enforce the criminal law against this type of contraceptive."

I shall have to admit that this reason does not appeal to me. Yes, Chancery Court dockets are crowded; Circuit Court dockets are crowded; the Supreme Court docket is crowded. A great many judges are overworked—but we cannot permit the processes of law to stand still because of this fact. I personally can never place my stamp of approval upon a refusal to enforce the law because the dockets will be burdened! Under the court decision today, a person who is inclined to violate this particular statute can say, "Oh yes, I'm violating the law, but there is nothing you can do about it because you don't have the facilities for enforcement." The result is that an offender not only goes unpunished, but what is probably more important, respect for law and authority will soon evanesce.

I dissent!